UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x

OPPENHEIMER & CO. INC.,

              Plaintiff,

    -against-

HUB CYBER SECURITY (ISRAEL) LTD. a/k/a HUB CYBER SECURITY LTD.,

              Defendant.

------------------------------ x

Case No:

**COMPLAINT**

Plaintiff Oppenheimer & Co. Inc. ("Plaintiff" or "Oppenheimer"), by its attorneys, Duane Morris LLP, as and for its Complaint against Defendant Hub Cyber Security (Israel) Ltd. a/k/a HUB Cyber Security Ltd. ("Defendant" or "HCSL"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover in excess of $12,000,000 in fees and expenses due to Oppenheimer by HCSL in connection with investment banking advice and services provided by Oppenheimer at HCSL's request, and related to HCSL's February 28, 2023 business combination with non-party Mount Rainier Acquisition Corp. ("Mount Rainier"). Pursuant to the parties' written agreement, upon the closing of the transaction, Oppenheimer was entitled to be paid a fee for its services in the amount of one percent (1%) of the transaction value (as defined in the agreement), plus its expenses. Just days before the subject transaction closed, HCSL contacted Oppenheimer, acknowledged that Oppenheimer was due a fee of over $12,000,000 with regard to the anticipated transaction, and requested that Oppenheimer agree to a significant reduction of the fee due to it. Despite having no obligation to do so, Oppenheimer conditionally accepted HCSL's request to reduce the fee due to it and the parties executed an

amended agreement stating the new agreed upon fee and payment terms. In the amended agreement Oppenheimer reserved its right to seek the full amount of the fee owed under the original agreement in the event of any breach of the amended agreement payment terms.  HCSL breached the amendment, as well as the parties' original agreement, by failing to pay **any** of the fees or the expenses to which Oppenheimer is entitled.  As set forth below, HCSL's breach of the parties' agreements entitles Oppenheimer to recover the sum of $12,062,751.12 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the transaction, together with interest, as well as its costs and legal fees associated with this action.

## PARTIES

2. Plaintiff Oppenheimer & Co. Inc. is a corporation organized and existing pursuant to the laws of the State of New York, which maintains its principal place of business at 85 Broad Street, 25th Floor, New York, New York 10004.

3. Upon information and belief, Defendant Hub Cyber Security (Israel) Ltd. a/k/a Hub Cyber Security Ltd. is a limited liability company organized and existing pursuant to the laws of the nation of Israel and which maintains its principal place of business located at 17 Rothchild Street, Tel Aviv, Israel.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this matter involves a dispute between a corporation organized pursuant to laws of the State of New York, with its principal place of business located within the State of New York, and a foreign limited liability company with its principal place of business located in the nation of Israel and the amount in controversy is in excess of $75,000.

5. This Court has jurisdiction over this matter pursuant to the terms of the parties'

written agreement in which the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York.

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the events and omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

7. Venue is appropriate in this District pursuant to the terms of the parties' written agreement in which the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York.

## BACKGROUND

### The Agreement

8. Among other services, Oppenheimer is an investment bank that provides emerging growth and mid-sized businesses with strategic advisory services and capital market strategies and investment banking advice and services.

9. Upon information and belief, HCSL is engaged in the business of providing cybersecurity advice and solutions to its customers.

10. In or about December of 2021, HCSL approached Oppenheimer and requested that Oppenheimer provide investment banking services and advice to HCSL with regard to the possible sale to or combination with a special purpose acquisition company (often referred to as a "SPAC").

11. On December 24, 2021, the parties entered into a written agreement regarding, among other things, the investment banking services to be provided by Oppenheimer, as well as the fees and reimbursements to which Oppenheimer would be entitled to in exchange for its investment banking services (the "Agreement"). HCSL's co-founder and former Chief

Executive Officer, Eyal Moshe, executed the Agreement on behalf of HCSL. A true and correct copy of the Agreement is annexed hereto as Exhibit A.

12. The Agreement provides:

> Oppenheimer will provide [HCSL] with financial advice and assistance in connection with the Transaction, which may involve, to the extent requested by [HCSL] and appropriate for the Transaction, advice and assistance in connection with defining strategic financial objectives, reviewing [HCSL's] historical and projected financial statements, identifying potential parties to a Transaction, assisting in the preparation of a confidential memorandum and related materials describing [HCSL] and its business for distribution to prospective SPACs, and assisting in negotiating the financial terms and structure of the Transaction.

Agreement, Exhibit A annexed hereto at p.1.

13. In exchange for the services outlined above, the Agreement provides:

> In connection with this engagement, [HCSL] agrees to pay Oppenheimer in cash a transaction fee equal to 1% of Transaction Value (as defined below) payable on the closing date of the Transaction if, during this engagement or within 12 months thereafter, [HCSL] consummates a Transaction or enters into an agreement and subsequently consummates a Transaction…

*Id.* at p.2.

14. While the Agreement acknowledges that HCSL was entitled to utilize two additional Israeli-based financial advisors with regard to a potential "Transaction", the parties agreed, "[a]ny fees payable by [HCSL] to [other financial advisors] will not reduce any fees payable to Oppenheimer hereunder."

*Id.* at p.1.

15. The Agreement further provides:

> All of Oppenheimer's fees and expenses are payable in U.S. dollars and free and clear of, and without any deduction or withholding for or on account of, any current or future taxes, levies, imposts, duties, charges or other deductions or withholdings levied in any jurisdiction from or through which payment is made, unless such deduction or withholding is required by applicable law, in which event [HCSL] will pay additional amounts so that the persons entitled to such payments will receive the amount that such persons would otherwise have received but for such deduction or withholding.

*Id.* at p. 5.[1]

16.    The Agreement also entitles Oppenheimer to be reimbursed for all of its reasonable out of pocket expenses (including legal fees) associated with the engagement. *Id.* at p.2.

17.    In the event of a dispute arising out of the Agreement, the Agreement provides that the parties irrevocably submit to the exclusive jurisdiction of the courts of the State of New York located within New York County and the United States District Court for the Southern District of New York. In connection with any such legal proceeding, the Agreement provides that HCSL expressly and irrevocably consents to the service of process by mail. *Id.* at p. 5-6.

18.    The Agreement entitles Oppenheimer to recover its costs associated with any breach by HCSL of the Agreement, including, but not limited to, reasonable attorneys' fees. *Id.* at Annex A "Indemnification."

19.    During the time period of approximately December 2021 through the closing of the transaction, Oppenheimer fully complied with its obligations under the Agreement and provided extensive and valuable services to HCSL pursuant to the Agreement.

20.    In March of 2022, in part as a result of the services provided by Oppenheimer, non-party Mount Rainier entered into an agreement with HCSL with regard to the combination of the entities (the "Transaction"). The Transaction constitutes a "Transaction" as defined by the Agreement.

21.    On March 23, 2022, HCSL issued a press release with regard to the Transaction, a copy of which is annexed hereto as Exhibit B. The press release states, "A-Labs Advisory &

---

[1] The Agreement also provides that it "and any related confidentiality agreement between Oppenheimer and the Company are the entire agreement between them with respect to Oppenheimer's engagement…and may not be amended or modified except in writing signed by the Company and Oppenheimer." *Id.* at p. 5.

Finance Ltd. and Oppenheimer & Co. Inc. are serving as financial advisors to [HCSL]…"

22.     The press release identified the anticipated value of the Transaction to be approximately $1.28 billion. *Id.*

23.     On or about August 24, 2022, HCSL filed a Form F-4 Registration Statement with the SEC with regard to the Transaction. The Form F-4 provides:

> **Certain Engagements in Connection with the Business Combination and Related Transactions**
>
> [HCSL] engaged A-Labs Finance and Advisory Ltd. ("A-Labs"), Oppenheimer & Co. Inc. ("Oppenheimer") and Cramim S.N. 570 Ltd. ("Cramim") as financial advisors in connection with the Business Combination and related transactions.
>
> \* \* \* \*
>
> In connection with the Transactions, Oppenheimer will receive a transaction fee equal to 1% of the aggregate value of [HCSL]…

**The Amended Agreement**

24.     Several days prior to the planned closing of the Transaction, HCSL contacted Oppenheimer with regard to the fee to which Oppenheimer was entitled under the Agreement upon the closing of the Transaction, as well as the reimbursements to which Oppenheimer was entitled.

25.     Neither during this conversation, nor during any prior or subsequent conversation, did HCSL dispute that: (i) Oppenheimer had provided its services diligently and fully and in compliance with the Agreement; or (ii) Oppenheimer was entitled to the full fee and reimbursement of expenses provided for within the Agreement. Despite Oppenheimer's full performance, HCSL requested that Oppenheimer accept a significant discount to the fee to which it was entitled under the Agreement and that the reduced fee be paid out over an extended period.

26.     While under no obligation to do so, Oppenheimer agreed to HCSL's request for a

fee reduction and for a payment of that reduced sum over time. The parties memorialized the fee reduction in a written agreement dated February 27, 2023 (the "Amended Agreement").

27. HCSL executed the Amended Agreement by the signature of its current Chief Executive Officer, Uzi Moskowitz.

28. The Amended Agreement expressly references the parties' original Agreement.

29. With regard to Oppenheimer's agreement to accept a reduced fee in connection with the Transaction, the Amended Agreement makes clear:

> Subject to Oppenheimer's receipt of the foregoing cash payments in the amounts, and at the times, specified in the sentence above, then the transaction fee and out-of-pocket expenses payable to Oppenheimer pursuant to the Agreement shall be deemed to have been paid in full… **For the sake of clarity, in the event that [HCSL] does not comply with the provisions hereof, Oppenheimer retains its right to seek payment of the full transaction fee and out-of-pocket expenses as calculated pursuant to the Agreement**.

**HCSL's Breach of the Agreement and the Amended Agreement**

30. The Transaction (i.e. the business combination between HCSL and Mount Rainier) closed on February 28, 2023 (the day after the parties executed and delivered the Amended Agreement). Annexed hereto as Exhibit C is a true and correct copy of a February 28, 2023 press release filed by HCSL with the SEC titled, "HUB Cyber Security Ltd. a Developer of Confidential Computing Cybersecurity Solutions and Services, Successfully Closes its Business Combination with Mount Rainier Acquisition Corp". The press release confirms that the Transaction closed on February 28, 2023 and, like the press release published on HCSL's website, identifies Oppenheimer as the company's financial advisor with regard to the Transaction.

31. As part of the business combination, a Delaware subsidiary of HCSL merged with and into Mount Rainier with Mount Rainier surviving the merger, making Mount Rainier a subsidiary of HCSL. HCSL issued its common shares to the former shareholders of Mount

Rainer who did not elect to redeem their shares; and HCSL became an SEC registrant with securities listed on a United States stock exchange.

32. Pursuant to the terms of the Amended Agreement, HCSL owed the first installment of Oppenheimer's fee on the closing date of the Transaction, i.e. February 28, 2023.

33. HCSL failed to make the payment due to Oppenheimer on February 28, 2023.

34. The day following its default under the Amended Agreement, March 1, 2023, HCSL's management met with Oppenheimer in New York and orally re-affirmed that it would make all payments due under the Amended Agreement.

35. On April 12, 2023, Oppenheimer sent a letter to HCSL advising that HCSL was in default of the Agreement and the Amended Agreement and demanding that HCSL immediately pay the $12,062,751.14 due under the Agreement, comprised of $12,000,000 in investment banking fees, plus $62,751.14 in reimbursable expenses. Oppenheimer also demanded the HCSL pay 1% of any debt component of the transaction to which Oppenheimer was likewise entitled under the Agreement.

36. HCSL failed to make the payment demanded by Oppenheimer within its April 12, 2023 letter, or to otherwise dispute that the sums demanded by Oppenheimer pursuant to the Agreement are immediately due and owing by HCSL.

37. As of the date of this Complaint, HCSL has not paid any portion of the fee that Oppenheimer is entitled to, nor has it reimbursed Oppenheimer for any of its reasonable out-of-pocket expenses associated with regard to the Transaction and as provided for within the Agreement. HCSL's material breach of the Agreement and the Amended Agreement entitle Oppenheimer to recover compensatory damages, as set forth herewith.  Oppenheimer is also entitled to recover pre-judgment interest at the rate of 9% per annum from February 28, 2023

through the entry of judgment, as well as its costs associated with this action, including, but not limited to reasonable attorneys' fees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Contract)

38. Oppenheimer repeats and re-alleges each and every allegation set forth within Paragraphs 1 through 37 of this Complaint as if set forth in full herein.

39. Oppenheimer and HCSL entered into an Agreement under which Oppenheimer provided certain investment banking advice and services to HCSL at HCSL's request.

40. The Agreement constitutes a valid and enforceable contract.

41. Oppenheimer has performed its obligations pursuant to the Agreement.

42. HCSL has materially breached the Agreement by, among other things, failing to pay Oppenheimer the fees provided within the Agreement as compensation for Oppenheimer's services, as well as failing to reimburse Oppenheimer for its reasonable out-of-pocket expenses as provided for within the Agreement.

43. Oppenheimer has been damaged as a result of HCSL's material breach of the Agreement in an amount to be determined through discovery prior to summary judgment, or at trial, but in no event less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction, together with interest, costs and reasonable attorneys' fees incurred in collecting amounts owed.

### SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

44. Oppenheimer repeats and re-alleges each and every allegation set forth within Paragraphs 1 through 43 of this Complaint as if set forth in full herein.

45. By entering into the Agreement, HCSL undertook an implied obligation of good faith and fair dealing with regard to Oppenheimer.

46. HCSL has breached its implied covenant of good faith and fair dealing by, among other things, failing to pay Oppenheimer the fees provided within the Agreement as compensation for Oppenheimer's services, as well as failing to reimburse Oppenheimer for its reasonable out-of-pocket expenses as provided for within the Agreement.

47. Oppenheimer has been damaged as a result of HCSL's breach of the implied covenant of good faith and fair dealing in an amount to be determined through discovery prior to summary judgment, or at trial, but in no event less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction, together with interest, costs and reasonable attorneys' fees incurred in collecting amounts owed.

### THIRD CAUSE OF ACTION
### (Quantum Meruit)

48. Oppenheimer repeats and re-alleges each and every allegation set forth within Paragraphs 1 through 47 of this Complaint as if set forth in full herein.

49. The provision of Oppenheimer's investment banking advice and services to HCSL was at the express request of HCSL.

50. HCSL accepted Oppenheimer's investment banking advice and services without objection.

51. HCSL has advertised within its own press release that Oppenheimer provided financial advice on its behalf with regard to the Transaction.

52. At all times, Oppenheimer reasonably believed that it would be compensated for its investment banking advice and services.

53. The reasonable and agreed value of the unpaid fee associated with Oppenheimer's

investment advice and services related to the Transaction is no less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction.

## **PRAYER FOR RELIEF**

WHEREFORE, Oppenheimer requests that this Court enter Judgment in favor of Oppenheimer and against HCSL as follows:

(i) On Plaintiff's First Cause of Action in an amount to be determined at trial, but in no event less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction, together with interest from February 28, 2023;

(ii) On Plaintiff's Second Cause of Action in an amount to be determined at trial, but in no event less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction, together with interest from February 28, 2023;

(iii) On Plaintiff's Third Cause of Action in an amount to be determined at trial, but in no event less than $12,062,751.14 plus 1% of the principal amount of any debt or other liabilities of HCSL as of the closing date of the Transaction, together with interest from February 28, 2023;

(iv) Awarding Oppenheimer recovery of all of its costs incurred in connection with this action, including but not limited to the reasonable fees and expenses of its counsel; and

(v) Awarding Oppenheimer such further relief as this Court deems just and proper.

Dated: New York, New York
        June 12, 2023

                              DUANE MORRIS LLP

                              By:    Michael H. Gibson (MG-2952)
                                       Walter A. Saurack (WS-8815)
                              230 Park Avenue, Suite 1130
                              New York, New York 10169
                              (212) 818-9200
                              mhgibson@duanemorris.com
                              wasaurack@duanemorris.com
                              *Attorneys for Plaintiff*
                              *Oppenheimer & Co. Inc.*